UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HALO THOMAS WASHINGTON,

        Petitioner,                           Case No. 1:16-cv-1062

v.                                                   Honorable Janet T. Neff

DeWAYNE BURTON,

        Respondent.
_____/

**OPINION**

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner Halo Thomas Washington presently is incarcerated at the Richard A. Handlon Correctional Facility. He is serving a term of imprisonment of 48 months to 180 months following his jury conviction for resisting and obstructing a police officer causing injury in violation of MICH. COMP. LAWS § 750.81d(2). The Michigan Court of Appeals concisely described the factual background of Petitioner's offense:

> Evidence produced at trial revealed that on October 8, 2013, defendant punched shelter employee Randolph Kling, breaking his jaw, after Kling told defendant he could not stay at the shelter because he had consumed alcohol. Officer Jerol Williams soon arrived at the scene and asked defendant to put his hands behind his back. Defendant complied at first, but then began to resist arrest. Williams attempted to control defendant with an arm bar, but when that failed, he attempted twice to sweep defendant's legs out from under him. In the course of the struggle, Williams fell and hit his back on a table, resulting in injuries requiring medical treatment. Williams managed to bring defendant to the ground just as Officer Justin Vanderkooy entered the shelter. The officers then handcuffed defendant and brought him into custody.

*People v. Washington*, No. 321125, 2015 WL 2448697, at *1 (Mich. Ct. App. May 21, 2015).

Petitioner filed a claim of appeal in the Michigan Court of Appeals, raising two claims of error:

I. The statute used to obtain the conviction requires that the Petitioner's conduct cause an injury to the victim. Interpretations of causation in criminal jurisprudence require that the conduct be a factual cause and a proximate cause which recognizes grossly negligent conduct on the part of the victim as intervening cause where the officer improperly attempted a leg sweep after it failed once in a tightly enclosed space causing both the victim and the Petitioner to fall into a table, the evidence is insufficient as a matter of law to establish causation.

II. The statutory sentencing scheme requires that the points for the offense be applied based on the conduct of the sentencing offense only. Interpretations of this statutory requirement support the claim that conduct related to other offenses is not counted unless the statute creating the variable authorizes it. Where the prosecutor and the trial court considered the conduct toward a

>different victim for a different offense and the presence of a second officer after the struggle ended, the assessment of 10 points for Offense Variable 9 results in an abuse of discretion.

(Pet., ECF No. 1, PageID.2.)  The Michigan Court of Appeals rejected Petitioner's claims of error in an opinion dated May 21, 2015.  Petitioner raised the same issues in an application for leave to appeal filed in the Michigan Supreme Court.  That court denied leave by order dated February 2, 2016.  Petitioner did not file a petition for certiorari in the United States Supreme Court.

On August 26, 2016, Petitioner filed this action raising the same issues he raised in the Michigan appellate courts.

## Discussion

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. At 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### I.      Sufficiency of the evidence

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both

the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier of fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [appellate court's] consideration of the trier of fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency of the evidence grounds. *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals identified the appropriate test for resolving Petitioner's sufficiency challenge: " whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *Washington*, 2015 WL 2448697 at *1 (citing *People v. Nowack*, 614 N.W.2d 78, 81 (Mich. 2000)).[1] Applying that test, the Michigan Court of Appeals resolved Petitioner's sufficiency challenge as follows:

> A defendant is guilty of resisting and obstructing a police officer causing injury if he or she "assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a bodily injury requiring medical attention or medical care." MICH. COMP. LAWS § 750.81d(2). To establish causation in a criminal offense, the prosecutor must show that a defendant's conduct was both a factual and a proximate cause of a victim's injury. *People v Feezel*, 783 N.W.2d 67 (2010). "Proximate causation 'is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural.' " *Id.* at 74, quoting *People v Schaefer*, 703 N.W.2d 774, 785 (2005). If there is a legally significant intervening cause that supersedes a defendant's act, the defendant's conduct will not be deemed a proximate cause of a victim's injury. *Feezel*, 783 N.W.2d at 74. Only acts that are not reasonably foreseeable will constitute a superseding cause. *Id.* Ordinary negligence is generally considered reasonably foreseeable, while gross negligence and intentional misconduct are "sufficient to 'break the causal chain between the defendant and the victim.' " *Id.*,

---

[1] The Michigan Court of Appeals cited a state court decision, *Nowack*, for the test; *Nowack*, in turn, relied upon *Jackson*, 443 U.S. at 307.

at 74-75, quoting *Schaefer*, 703 N.W.2d at 785-86. In the criminal context, gross negligence refers to "wantonness and disregard of the consequences which may ensue," and "conduct indicating that the actor is aware of the risks but indifferent to the results." *Feezel*, 783 N.W.2d at 74-75 (citations, quotation marks, and brackets omitted).

Defendant first argues that he was not a proximate cause of Williams's injuries because he "did not take any physically aggressive action toward" Williams and "did not swing, punch, kick, or shove the officer." However, a defendant need not be physically aggressive to trigger the application of MICH. COMP. LAWS § 750.81d(2). Rather, a defendant is guilty under MICH. COMP. LAWS § 750.81d(2) if he "resists . . . [or] opposes" a police officer "causing a bodily injury requiring medical attention or medical care." Although defendant was not physically aggressive toward Williams, Williams testified at trial that when he attempted to handcuff defendant, defendant "straightened out his elbow, and he turned around and straightened his body and wasn't submitting" to the arrest. Defendant's resistance and opposition required Williams to seek alternative measures to secure defendant, which ultimately resulted in Williams falling to the ground and being injured. Accordingly, absent another superseding cause, defendant's conduct of resisting and opposing arrest was a proximate cause of Williams's injuries.

Defendant next argues that Williams's multiple attempts to sweep defendant's legs out from under him were grossly negligent and therefore represented a superseding cause sufficient to break the causal chain between defendant's conduct and Williams's injuries. Viewing the evidence in a light most favorable to the prosecution, Williams was not grossly negligent in attempting to sweep defendant's legs out in order to control and arrest defendant. Testimony at trial revealed that defendant assaulted another victim moments before Williams arrived, and that defendant was actively resisting arrest by Williams. Williams testified that he wanted to complete the arrest with "as minimal force as possible," and stated that he believed the leg sweep was the best way to achieve that end. Williams testified that he did not use his taser to subdue defendant because he was concerned about the possible negative implications on defendant's health. In light of this evidence, a jury could reasonably determine that Williams's method of subduing defendant was an appropriate and cautious strategy and did not constitute gross negligence that would break the causal chain between defendant's conduct and the victim's injury. See *Feezel*, 783 N.W.2d at 74-75. Accordingly, the prosecution presented sufficient evidence from which a reasonable jury could conclude beyond a reasonable doubt that defendant's actions proximately caused Williams's injury.

*Washington*, 2015 WL 2448697 at *2-3 (parallel citations omitted).

This Court is bound by the Michigan Court of Appeals' interpretation of state law. The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v Richey*, 546 U.S. 74, 76 (2005)). Thus, when the Michigan Court of Appeals declares that the criminal statute does not require physically aggressive action, this Court must accept that declaration. To the extent Petitioner's habeas challenge depends on the opposite conclusion, the challenge necessarily fails.

Similarly, when the Court of Appeals finds facts to show a chain of causation between Petitioner's resistance and Officer Williams's injury, this Court must presume those facts to be correct. Petitioner can overcome that presumption with clear and convincing evidence, but he has not done so here. Instead, he claims that as a matter of state law, Officer Williams's actions were grossly negligent and, therefore, broke the causal chain. Petitioner presents argument and an interpretation of the facts to support that conclusion, but that is not enough.

Petitioner fails to offer clear and convincing evidence to overcome the presumptively correct facts that (1) Petitioner had already assaulted one victim before Officer Williams arrived; (2) Petitioner was actively resisting his arrest by Officer Williams; and (3) use of the taser raised concerns for Petitioner's health. Rather, Petitioner focuses on the facts that he did not "swing, punch, kick or shove the officer," that quarters were tight for a leg sweep, and Officer Williams attempted it a second time after it failed once. (Pet., ECF No. 1, PageID.5.) Even though Petitioner's facts support his position, they do not rebut the facts upon which the court of appeals relied. Viewing those facts in a light most favorable to the prosecution, the Michigan Court of

Appeals determined, a reasonable jury could conclude beyond a reasonable doubt that Petitioner caused Officer Williams' injury.

Petitioner has failed to demonstrate how that determination is contrary to or an unreasonable application of *Jackson*, the clearly established federal law with regard to sufficiency. Petitioner has also failed to demonstrate that the Michigan Court of Appeals' determination of the facts was unreasonable in light of the record. In the absence of such showings, Petitioner's sufficiency habeas claim has no merit.

### II.    Sentencing

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES).  The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 131 S. Ct. at 14; *Bradshaw*, 546 U.S. at 76; *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

A review of Petitioner's argument with regard to his sentence, and the Michigan Court of Appeals' resolution of it, reveals that it is purely a state law claim. Petitioner argues here, as he did in the state appellate courts, that the trial court should not have assessed him 10 points under Offense Variable 9, which considers whether more than one victim was placed in danger of physical injury. The court of appeals resolved the matter as follows:

> A trial court may assess 10 points under OV 9 when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death." MICH. COMP. LAWS § 777.39(1)(c). For purposes of scoring OV 9, the term "victim" includes "each person who was placed in danger of physical injury or loss of life or property." MICH. COMP. LAWS § 777.39(2)(a). An assessment of 10 points under OV 9 is appropriate when individuals were "present at the scene of the [offense] who were placed in danger of injury or loss of life." *People v Sargent*, 750 N.W.2d 161, n.2 (2008). A person may be a victim under OV 9 even if he or she did not suffer actual harm because close physical proximity to a threatening situation can place an individual in danger of injury. *People v Morson*, 685 N.W.2d 203 (2004).
>
> In this case, the trial court considered Vanderkooy a victim under OV 9. Defendant argues that Vanderkooy was not a victim because he was merely present during the arrest. However, testimony presented at trial revealed that Vanderkooy arrived just as Williams brought defendant to the ground. Williams had not yet handcuffed defendant, and Vanderkooy had to assist Williams in handcuffing defendant and taking him into custody. Shelter employee Vincent Wright testified that after he let Vanderkooy inside, "[defendant] got stronger" and "it took them all to get him down." Although only Williams suffered injuries as a result of defendant's resistance, Vanderkooy was in close proximity to defendant before he was handcuffed, and was therefore placed in danger of injury by defendant's conduct of resisting arrest. A preponderance of the evidence in the record supported the trial court's assessment of 10 points for OV 9, and defendant is not entitled to resentencing.

*Washington*, 2015 WL 2448697 at *3-4 (parallel citations omitted). Petitioner offers no evidence, much less clear and convincing evidence, to overcome the presumptively correct factual finding that Officer Vanderkooy was placed in danger of injury by Petitioner's conduct. Moreover, this Court is bound by the Michigan Court of Appeals' interpretation of the guidelines statute that nothing more is required to warrant a score of 10 points on Offense Variable 9. *Stumpf*, 722 F.3d at 746 n.6.

To the extent that Petitioner argues that his sentence violated due process, he fails to to state a federal claim. A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447;*United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner does not even attempt to identify any facts found by the court at sentencing that were either materially false or based on false information. He therefore fails to demonstrate that his sentence violated due process. *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court)

To the extent Petitioner intends to suggest that his sentence was disproportionate, he also fails to state a cognizable federal claim. In *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and

the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). It is plain that *Milbourn* was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. *See Wilson*, 131 S. Ct. at 14; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41. Thus, Petitioner's claim based on *Milbourn* is not cognizable in a habeas corpus action.

Moreover, any claim that Petitioner's sentence was disproportionate under the Eighth Amendment is without merit. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his

sentence falls within the maximum penalty under state law. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

For all these reasons, the state-court's rejection of Petitioner's claims was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

### Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant

service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated: __September 14, 2016__  /s/ Janet T. Neff
 Janet T. Neff
 United States District Judge